## W. C. Thompson v. Anna Elliott.

1. Chattel Mortgage Foreclosure—*Under the Act of 1899.*—Section 1 of the act to regulate the foreclosure of chattel mortgages on household goods, wearing apparel and mechanics' tools, approved June 5, 1899, does not apply to a chattel mortgage upon a piano.

2. Same—*Order of Court, When Unnecessary.*—An order of a court of record for an order directing the sheriff to seize mortgage property is unnecessary, unless such property consists of necessary household goods, wearing apparel or mechanics' tools.

3. Household Goods—*What is Not.*—A piano used in a family is no part of the necessary furniture of the household.

Action on the Case, for the wrongful taking of property. Appeal from the Circuit Court of Vermilion County; the Hon. Ferdinand Bookwalter, Judge, presiding. Heard in this court at the May term, 1899. Reversed. Opinion filed December 13, 1899.

Penwell & Lindley, attorneys for appellant.

Lawrence & Lawrence, attorneys for appellee.

Mr. Justice Harker delivered the opinion of the court.

Baldwin & Company, manufacturers and dealers in pianos, sold appellee, on the installment plan, a piano for $375. The first payment consisted of an old organ and some cash, amounting in all to $135, and the balance was divided into quarterly installments of $25 each, for which appellee gave her promissory note and also the following contract:

Piano and Organ Contract.

"I, Anna Elliott, residing at No. — street, Town of Ridge Farm, County of Vermilion, State of Illinois, in consideration of three hundred and seventy-five dollars, to me paid by D. H. Baldwin & Co., do hereby sell and convey to Dwight H. Baldwin, Lucien Wulsin, A. A. Van Buren, George W. Armstrong, Jr., and Clarence Wulsin, comprising the firm of D. H. Baldwin & Co. of Indianapolis, Indiana, their heirs and assigns, one Baldwin piano, No. 2,023, style No. 21, C. W., to be void if I shall pay to D. H. Bald-

win & Co., at Farmers' State Bank of Ridge Farm, Ill., three hundred and seventy-five dollars, as follows:

Forty dollars on the 10th day of July, 1895; $95 on the 10th day of July, 1895; $25 on the 10th day of October, 1895; $25 on the 10th day of January, 1896; $25 on the 10th day of April, 1896; $25 on the 10th day of July, 1896; $25 on the 10th day of October, 1896; $25 on the 10th day of January, 1897; $25 on the 10th day of April, 1897; $25 on the last day of July, 1897; $25 on the 10th day of October, 1897; $15 on the 10th day of January, 1898, until the full sum above named shall have been paid, with interest on each of said sums at the rate of seven per cent. per annum, which amounts are secured by my notes of even date herewith.

I am to retain possession of said property until default shall be made in payment of said sums (insuring loss by fire), but if I fail to make any of the payments with interest thereon at the times above specified, or shall attempt to sell or remove said property from the premises or town above mentioned without written consent of D. H. Baldwin & Co., or if at any time they or their assigns may declare the entire amount due and take possession of said property and sell the same at auction, or giving ten days' notice by advertisement in a newspaper, or by private bargain without advertisement, at such prices as they may deem proper, and after deducting the amount due them, interest thereon as above, expense, including costs of sale, pay to me the overplus, if any, on demand at their place of business.

Witness my hand and seal this 10th day of July, 1895.

ANNA ELLIOTT.     [SEAL.]''

Appellee paid the first three installments, but failed to make further payment. After some six or seven installments had fallen due, appellee undertook to move the piano from where she had been living to Danville, Ill., when one Ben Hester, a deputy sheriff under appellant, took possession of the instrument and delivered it to Baldwin & Co. Baldwin & Co. advertised it for sale and bid it in for $165, the balance due on the notes and contract. This suit followed against appellant, he being the sheriff of the county, and Hester, acting as his deputy, in taking possession of the piano. A trial was had, resulting in a verdict and judgment for $200.

Section 1 of an act to regulate the foreclosure of chattel

mortgages on household goods, wearing apparel and mechanics' tools, approved June 5, 1899, reads as follows :

" Be it enacted by the people of the State of Illinois, represented in general assembly, that no chattel mortgage on necessary household goods, wearing apparel or mechanics' tools covered by a chattel mortgage shall be seized or taken out of the possession of the mortgagor and foreclosed, except by sheriff, and then only after the mortgagee, or his agent, shall present an affidavit to a judge of any court of record, setting forth that the mortgage is due, or that he is in danger of losing his security, giving the fact upon which he relies, and shall obtain an order from such judge directing such sheriff to seize such household goods, wearing apparel or mechanics' tools, and hold them subject to the order of the court; provided that nothing herein shall apply to the sale of furniture by regular dealers on the so-called installment plan; provided, this act shall not apply to the foreclosure of chattel mortgages executed prior to the time this act shall take effect."

Acting on the theory that the above statutory provision required them to apply to a judge of a court of record for an order directing the sheriff to seize the property in question, Baldwin & Co. filed in the County Court of Vermilion County a sworn application for such an order. It was obtained and placed in the hands of appellant to execute. No such order was necessary to entitle them to possession of the piano. It clearly appears that it was no part of the necessary household furniture; and further, it was purchased from regular dealers on the installment plan. Treating the contract as a chattel mortgage and commencing proceedings in court to foreclose it, under the fallacious idea that such course was necessary, did not estop Baldwin & Co. from exercising the right to seize the property after discovering their mistake, as contended by appellee. They had done nothing to cause appellee to change her course of conduct, or to act differently from what she would have done had no affidavit been filed in the County Court.

Under the evidence in the case, there is no cause of action against appellant. The judgment will be reversed, but the cause not remanded.